UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
SBAV LP,                                                  :
                                                          :
                                    Plaintiff,            :            13 Civ. 372 (PAE)
                                                          :
                      -v-                                 :            OPINION & ORDER
                                                          :
PORTER BANCORP, INC., PBI BANK, INC., J.                  :
CHESTER PORTER, and MARIA L. BOUVETTE,                    :
                                                          :
                                    Defendants.           :
                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        This decision addresses a motion to transfer venue to Kentucky.  Plaintiff SBAV LP

("SBAV") brought this lawsuit against Porter Bancorp, Inc. ("Bancorp"), PBI Bank, Inc.

("PBI"), J. Chester Porter ("Porter"), and Maria L. Bouvette ("Bouvette") (collectively,

"defendants"), alleging negligent misrepresentation, breach of contract, and violation of

Kentucky securities laws, all in connection with Bancorp's 2010 raise of capital from SBAV.

Defendants move to dismiss for lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2), and

for failure to state a claim, *see* Fed. R. Civ. P. Rule 12(b)(6); in the alternative, they ask the

Court to transfer this case to the United States District Court for the Western District of

Kentucky, pursuant to 28 U.S.C. § 1404(a).  For the following reasons, the motion to transfer

venue is granted, and defendants' motion to dismiss is denied without prejudice.

I.      **Background**[1]

      **A.  The Parties**

SBAV is a Delaware limited partnership with its principal place of business in New York, New York.  Am. Compl. ¶ 5.

Bancorp is a Kentucky corporation with its principal place of business in Louisville, Kentucky.  As a bank holding company, it is regulated by the Federal Reserve Bank of St. Louis. PBI, Bancorp's wholly-owned subsidiary, is also a Kentucky corporation with its principal place of business in Louisville.  *Id.* ¶ 6.  At all relevant times, Porter was chairman of the board of Bancorp and PBI, and Bouvette was president and chief executive officer ("CEO") of both companies.  Bouvette Aff. ¶ 1.

---

[1] The following account of SBAV's factual allegations is drawn from the Amended Complaint ("Am. Compl.") (Dkt. 31).  For background and context, the Court also cites SBAV's brief in opposition to the motion to dismiss ("Pl. Br.") (Dkt. 50), and the affidavits and attached exhibits of Beth I.Z. Boland ("Boland Aff.") (Dkt. 48) and Scott Arnold ("Arnold Aff.") (Dkt. 47), both filed in support of that opposition.

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must assume the truth of the allegations in the Complaint and draw all inferences in the plaintiff's favor.  *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012).  Here, however, defendants also move on other grounds.  In deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue.  *See, e.g.*, *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990); *Mastercard Int'l, Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004) (relying on defendant's declarations in granting motion to transfer, while denying motion to dismiss for lack of personal jurisdiction).  The Court considers, for these purposes, defendants' briefs in support of their motion to dismiss ("Def. Br." and "Def. Reply Br.") (Dkt. 42, 55) and the affidavits and attached exhibits of Maria L. Bouvette ("Bouvette Aff." and "Bouvette Reply Aff.") (Dkt. 38, 52), Fred Price ("Price Aff.") (Dkt. 39), David G. Tobias ("Tobias Aff.") (Dkt. 35), Thomas F. O'Neill ("O'Neill Aff.") (Dkt. 53), and W. Kirk Wycoff ("Wycoff Aff.") (Dkt. 54).

**B. Bancorp's Raise of Capital from SBAV**

Beginning in 2010, Bancorp sought to raise capital, to enable it to comply with capital requirements imposed by federal and state law. Am. Compl. ¶¶ 14, 18. Bouvette and Porter engaged Sandler O'Neil & Partners, L.P. ("Sandler"), a New York-based investment bank, to identify potential investors for Bancorp. *Id.* ¶ 19. Sandler did so, and, as a result of its efforts, several investors, including some based in New York, acquired Bancorp securities, as part of a private placement which closed on June 30, 2010. *Id.* ¶ 22.

Before the private placement closed, SBAV was put in contact with Bancorp.[2] Between July 1 and July 23, 2010, SBAV and representatives of Bancorp discussed a potential investment. *Id.* ¶ 24. While doing its due diligence, Bancorp provided SBAV with access to a "virtual due diligence room," which SBAV accessed from New York. *Id.* ¶ 23. On or about July 13, 2010, representatives from SBAV's investment manager met with Bouvette, Porter, and other Bancorp executives in Bancorp's offices in Louisville, Kentucky. *Id.* ¶ 25.

On July 23, 2010, SBAV entered into a letter agreement with Bancorp. *Id.* ¶ 28; Tobias Aff. Ex. 2 (the "Letter Agreement"). The Letter Agreement incorporated the terms of several agreements that had been part of the private placement. These included a Securities Purchase Agreement ("SPA") (Tobias Aff. Ex. 3), the Voting and Support Agreement, and the Registration Rights Agreement. Am. Compl. ¶ 28.

---

[2] There is a factual dispute between the parties whether Sandler played a role in introducing SBAV to Bancorp. *Compare* Am. Compl. ¶ 23, *and* Arnold Aff. ¶¶ 3–4, *with* Price Aff. ¶¶ 1–3, Bouvette Reply Aff. ¶¶ 3–4, Wycoff Aff. ¶¶ 2–4, *and* O'Neill Aff. ¶¶ 1–6. It is undisputed, however, that, even if Sandler was responsible for the introduction, the parties thereafter negotiated independently of Sandler, and that Sandler did not receive any compensation from Bancorp attributable to the fact of SBAV's investment. *See* Tr. 11–13, 22–23. The Court assumes *arguendo*, as SBAV has posited, that Sandler's efforts were responsible for introducing SBAV and Bancorp.

## C. Procedural History

On December 17, 2012, SBAV filed its initial Complaint in New York State Supreme Court, claiming, *inter alia*, that defendants made material misrepresentations to SBAV about Bancorp's stability and financial health in connection with their solicitation of capital from SBAV.

On January 16, 2013, defendants removed the action to this Court, based on diversity jurisdiction.  Dkt. 1.  On February 6, 2013, defendants moved to dismiss.  Dkt. 15–19.  On February 27, 2013, in response to that motion, SBAV filed an Amended Complaint.  Dkt. 31 ("Am. Compl.").  Its three causes of action allege: (1) a violation of the Kentucky Securities Act, Ky. Rev. Stat. Ann. § 292.480; (2) negligent misrepresentation; and (3) as to Bancorp, breach of contract.

On March 30, 2013, defendants moved to dismiss the Amended Complaint, for lack of personal jurisdiction and for failure to state a claim; in the alternative, they moved for a transfer of venue to the Western District of Kentucky.  Dkt. 34–42.  In challenging personal jurisdiction, defendants argued that they (and in particular, Porter and Bouvette) lacked sufficient contacts with New York.  In seeking transfer, defendants argued that the underlying events and the location of potential witnesses disproportionately favored Kentucky over New York.

On April 10, 2013, SBAV filed its opposition to the motion.  Dkt. 47–50.  It argued that the defendants had substantial contacts with New York; and, as to the transfer motion, that the witnesses other than Bancorp's and PBI's employees are largely based in New York and Philadelphia, and that this Court is the "recognized expert in the securities laws at issue here" and has a "compelling interest in policing securities sellers seeking capital from New York."  Pl.

Br. 2.  On April 24, 2013, defendants filed their reply.  Dkt. 52–55.  On May 16, 2013, the Court

heard argument.  *See* Dkt. 61.

## II.    Discussion

### A.  Threshold Considerations

Although it is common to resolve challenges to personal jurisdiction before addressing

motions to transfer venue, *see Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Cavit*

*Cantina Viticoltori Consorzio Cantine Sociali Del Trentino Societa' Cooperativa v. Browman*

*Family Vineyards, Inc.* ("*Cavit Cantina*"), 656 F. Supp. 2d 421, 424 (S.D.N.Y. 2009) (citing

*Leroy*, 443 U.S. at 180)), courts are not required to do so.  Courts may instead address venue

applications at the threshold, "when there is a sound prudential justification for doing so,"

because "neither personal jurisdiction nor venue is fundamentally preliminary in the sense that

subject-matter jurisdiction is."  *Leroy*, 443 U.S. at 180; *Cavit Cantina*, 656 F. Supp. 2d at 424.

Addressing a venue motion in lieu of first addressing personal jurisdiction is particularly

sensible where there is a close question whether personal jurisdiction exists over a defendant.

*See, e.g.*, *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, No. 12 Civ. 5297

(PAE), 2013 WL 788054, at *4 (S.D.N.Y. Mar. 4, 2013); *Cavit Cantina*, 656 F. Supp. 2d at 424

(deciding venue first because "a substantial and genuine debate" existed over whether personal

jurisdiction over defendant would be proper).  To address a venue challenge does not require a

preliminary finding that "the transferring court has personal jurisdiction over the defendants."

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962).  And where personal jurisdiction would

likely exist in the transferee district over a defendant who contests personal jurisdiction in the

Southern District of New York, it is "prudentially appropriate to address venue first since a

decision to transfer would render personal jurisdiction analysis with respect to [the Southern

District] irrelevant." *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 385–86 (S.D.N.Y. 2010); *see also Corke v. Sameiet M.S. Song of Nor.*, 557 F.2d 77, 79–80 (2d Cir. 1978); *Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977) ("[The Court] has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice.").

These factors warrant addressing defendants' transfer motion first. As the parties' briefs and argument underscored, there is a substantial question whether personal jurisdiction exists over the individual defendants, especially Porter, in this district, whereas it is undisputed that personal jurisdiction would exist over both individuals in the Western District of Kentucky. There is no allegation that Porter ever himself did business in New York, and the allegations as to Bouvette's presence or involvement in New York are sparse.[3] By contrast, the Western District of Kentucky assuredly has personal jurisdiction over all four defendants. Both Bancorp and PBI are Kentucky companies doing business in Kentucky; and both Bouvette and Porter are domiciled in Kentucky. It is, therefore, prudent for the Court first to address the motion to transfer venue.

**B. The Motion to Transfer Venue**

Under 28 U.S.C. § 1391, venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of that property that is the subject of the action is situated." Defendants do not contend that venue is improper in the Southern District of New York, but rather seek discretionary transfer under § 1404(a).

---

[3] In what may be viewed as a tacit acknowledgment that its proof as to personal jurisdiction is dubious as to Porter and Bouvette, SBAV asked the Court to order jurisdictional discovery, presumably aimed at discovering facts that would support personal jurisdiction in this district over those defendants. *See* Dkt. 22–24.

Section 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) gives district courts wide latitude to decide whether to transfer venue.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011).

In deciding motions to transfer venue under § 1404(a), courts inquire, first, "whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion."  *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS)(HBP), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).   The answer to the first inquiry is yes:  This action could have been brought in the Western District of Kentucky.  Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Porter and Bouvette reside in Louisville, Kentucky, and Bancorp and PBI are Kentucky corporations with principal places of business in Louisville, Kentucky.  Bouvette Aff. ¶ 3.  Accordingly, venue would be proper in the Western District of Kentucky.

Assessing whether transfer is a valid exercise of discretion requires the Court to balance various factors: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *See Robertson*, 2011 WL 5175597, at *4; *Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d

329, 330 (S.D.N.Y. 2007); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56–57 (S.D.N.Y. 2001).

### C.  Factors Favoring Transfer

Considered together, the relevant factors under § 1404(a) lopsidedly favor transfer of this action to the Western District of Kentucky, and such transfer is an appropriate exercise of discretion.  Five of the above nine factors, in fact, favor transfer to Kentucky, whereas only one favors New York.

#### 1.  Locus of Operative Facts

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer."  *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (citation omitted).  It substantially favors transfer from this district when a party "has not shown that any of the operative facts arose in the Southern District of New York."  *Dr. Boy GmbH v. Nationwide Ins.*, No. 96 Civ. 3217 (AGS), 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996).  A transfer to a district where the key operative events occurred serves "the interests of justice."  *Cohn v. Metro. Life Ins., Co.*, No. 07 Civ. 0928 (HB), 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) ("[W]here there is no material connection between this district and the operative facts[,] the interests of justice require the transfer of the action." (citation omitted)).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises."  *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96 Civ. 8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (citation omitted).

For several reasons, the locus of operative facts in this case is in Kentucky.  SBAV's securities fraud claims allege misrepresentations and omissions by defendants; the same alleged misstatements form the basis for the negligent misrepresentation claim.  "Misrepresentations and

8

omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) (quoting *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)); *see also APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 672–73 (S.D.N.Y. 1999) ("Because the Securities Act claims depend largely on statements issued by Defendants in the January Prospectus and other press releases, these claims may be understood to have arisen, to some extent, in Atlanta, where Premiere's headquarters is located and the documents were prepared.").

Here, the alleged misrepresentations were all made in Kentucky:  The SEC filings on which SBAV claims to have relied were created in Kentucky.  Bouvette Aff. ¶ 14.  And the oral misrepresentations on which SBAV bases its claim were made either at a July 13, 2010 dinner in Louisville, during due diligence in Kentucky, or over the telephone from Kentucky.  *See* Am. Compl. ¶ 13.  On the record at hand, there is no basis to conclude that SBAV ever met with defendants in New York.  Additionally, defendants' headquarters are in Kentucky.  This fact is commonly given weight in the transfer analysis:  "There is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered.  Nevertheless, as a practical matter, such transfers are routine."  *In re Hanger Orthopedic Grp.*, 418 F. Supp. 2d at 168 (collecting cases).  Accordingly, the loci of operative facts undergirding both the securities fraud claim and the negligent misrepresentation claim are both in Kentucky.

As to the contract claim, the locus of operative facts is determined by the locations where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.  *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08 Civ. 8106

(PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009). On the current record, it is not clear where the relevant contracts—the Securities Purchase Agreement and the Letter Agreement— were signed. The negotiations took place by phone and email, between Kentucky and New York; and SBAV's due diligence was done in a virtual due diligence room, which is not located in either forum, and so does not shift the locus of operative facts. These factors thus do not clearly favor either forum. However, the alleged breach (*i.e.*, the breach of representations and warranties in the agreements) unavoidably took place in Kentucky: That is where defendants' business was operated (as well as where the defendants made the alleged misrepresentations). Thus, the operative facts underlying the contract claim also favor Kentucky.

As to each of these claims, SBAV relies heavily on the fact that defendants availed themselves of the New York capital markets. But that factor merits limited weight. The sale to SBAV was a private transaction, not one effected on a New York-based exchange. And the mere fact that SBAV, a New York-based corporation, purchased shares from a Kentucky corporation does not situate the locus of operative facts in New York or substitute for proof of substantial contacts between defendants and this forum. *See In re Nematron*, 30 F. Supp. 2d at 404 ("[T]hat the shares were directed to New York does not make it a forum which has a significant contact with the operative facts."). It is also not determinative that, prior to the courtship of SBAV, Bancorp's private placement, assisted by Sandler, targeted some New York investors, or that Bouvette visited New York approximately once a year to speak at investment conferences. *See* Pl. Br. 11–13; Am. Compl. ¶ 20. Those facts are germane to assessing whether there is personal jurisdiction over those defendants, but they are of no more than background relevance to this lawsuit. "The central inquiry in this instance . . . is not whether Defendants have some material connection to this District, but rather, whether the connection is material to this litigation." *Cohn*

*v. Metro. Life Ins., Co.*, No. 07 Civ. 0928 (HB), 2007 WL 1573874, at *3 (S.D.N.Y. May 31,

2007).  Notably, SBAV does not assert that either Bouvette or Porter traveled to New York in

order to meet with *SBAV*, or that any defendant ever directly targeted *SBAV*.

Finally, the statements that SBAV claims were misrepresentations related overwhelming

to property and assets of Bancorp located in Kentucky:  The misrepresentations recited in the

Amended Complaint fundamentally relate to Kentucky real estate.  The Amended Complaint

summarizes the alleged misrepresentations as follows:

> [Defendants] represented to SBAV that problem loans had been classified
> appropriately, that adequate reserves had been taken against their balances, that
> real estate owned by the Bank upon foreclosure or other legal processes (known
> as Other Real Estate Owned, or "OREO") had been valued at "fair market" value
> on the Bank's balance sheet, and that the Bank had adequate financial and
> disclosure controls and sufficient expertise to evaluate its loan book and OREO.

Am. Compl. ¶ 2.

The majority of specifically alleged misstatements referenced in the Amended Complaint

revolve around valuation of OREO—"Other Real Estate Owned"—and whether it was misstated.

For example, SBAV alleges that:

> [D]efendants knew appraisals which formed the basis for the Bank's *valuation of
> its real estate assets and collateral* were defective in that they did not provide
> adequate market and property data to support their valuation analysis and
> conclusions, did not contain sufficient descriptions of the subject properties or
> their relevant markets, did not list sufficient comparable sales data, did not
> consider the conditions of the subject or comparable properties, were conducted
> by relatives, and/or were not timely updated.

*Id.* ¶ 63 (emphasis added).  SBAV alleges that at the July 13, 2010 dinner in Louisville,

"Bouvette and Porter said that the OREO properties were valued on the balance sheet at prices

that reflected fair value for those assets (i.e., prices that could be achieved in a sale between a

willing seller and a willing buyer at that time)."  *Id.* ¶ 25; *see also id.* ¶ 64 (defendants

"overstated the value of the Bank's non-interest earning assets, including OREO").  SBAV also

alleges that defendants misrepresented the *process* through which Bancorp appraised its properties—specifically, that although it represented that "OREO is evaluated at the time of acquisition and recorded at fair value as determined by independent appraisal or internal market evaluation less cost to sell," in fact, the appraisers were not independent and included Porter's son. *Id.* ¶¶ 42–43.

The Amended Complaint lists numerous specific properties that SBAV contends represent "instances of deficient valuation and valuation processes relating to the Bank's OREO properties." *Id.* ¶¶ 52–53; *see also id.* (listing examples of shortcomings in appraisals of specific properties, including "failed to consider the condition of the property," "no discussion as to adjustment for current market conditions," "appraisal did not contain . . . a detailed discussion of the adjustment process (comparing the subject property to those considered 'comparable')") . Each of these OREO properties is located in Kentucky, as are the Bancorp loan officers who initially valued them.  Bouvette Aff. ¶ 21.

Further, the Amended Complaint alleges, SBAV's losses occurred when, in response to regulatory pressure, Bancorp "reluctantly admitted the poor quality of its loan book and over-valuation of its real estate."  Am. Compl. ¶ 51.  It alleges that these losses occurred "despite little change in the underlying credit quality of the borrowers or market for real estate."  *Id.* ¶ 58. Indeed, the Amended Complaint puts centrally at issue factors specific to Kentucky: the performance of the real estate market in Kentucky in general and Louisville in particular, personal income in Kentucky as it affected credit quality, and the performance of other Kentucky banks.  *Id.*  And the disclosure documents on which SBAV alleges it relied confirm that Bancorp's allegedly misstated assets were principally Kentucky real estate:  Bancorp's 2009 Form 10-K states that "[a]pproximately 89.1% of our loan portfolio . . . was comprised of loans

collateralized by real estate."  Bouvette Aff. Ex. 6, at 10 (cited in Am. Compl. ¶ 26); *accord* Bouvette Aff. Ex. 7 (Form 8-K); Boland Aff. Ex. A.

 For these reasons, the events most material to this case are lopsidedly ones that occurred in or relate to Kentucky.  This factor, therefore, emphatically favors the Western District of Kentucky.

## 2. Convenience of the Witnesses

 The convenience of witnesses is an important consideration—it has often been described as the single most important § 1404(a) factor.  *See Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989); *Guardian*, 2011 WL 3678134, at *3; *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F. Supp. 320, 323 (S.D.N.Y. 1996) (citing *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995)).

 Here, as colloquy at argument revealed, there are two areas of witness testimony that would predominate were this case to reach trial: (1) witnesses testifying as to the statements or misrepresentations made by defendants, and (2) witnesses supplying evidence bearing on the falsity, or lack thereof, of those statements, and the factual basis on which they were made.

 The first category should require a vanishingly small number of trial witnesses.  The SPA expressly limits the representations on which SBAV can rely to those made in writing in the SPA and the Letter Agreement:

> The Company and each of the Purchasers acknowledge and agree that no party to this Agreement has made or makes any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Article III and the Transaction Documents.

SPA at 25.  SBAV's case therefore turns on whether or not Bancorp's written representations in these two documents were inaccurate or misleading.  Although a witness would be necessary to authenticate the two documents containing those representations, there ought be no need for any

additional witnesses to establish the fact of defendants' purportedly actionable representations to SBAV.  And because those representations are set forth in writing in the transaction documents themselves, there is no basis to expect defendants to dispute that those representations were made.

The second important category consists of witnesses whose testimony would bear on whether (as SBAV alleges) the representations made by defendants were false or misleading, or whether (as defendants contend) they had a valid basis in fact.  As argument revealed, the trial's outcome is likely to turn on this issue, and it is reasonable to expect substantial testimony on this point.  In particular, the parties will dispute whether or not defendants' valuations of Kentucky real estate were defensible; whether they were made in accordance with relevant regulatory and/or accounting standards; and whether defendants had a *bona fide* factual basis for each disputed representation.

It is reasonable to expect the witnesses as to these points to be dominantly sited in Kentucky.  And Bancorp has in fact posited that its defense at trial of its valuations of these properties would center on the testimony of Kentucky-based persons.  As Bancorp has proffered, fact witnesses as to these topics are likely to include Bancorp employees, former employees, and loan officers; Bancorp's outside auditors, appraisers, and regulators; and other persons with evidence relating to the valuation of real estate in Kentucky at the relevant points in time, and/or to the basis that Bancorp and the individual defendants had in real time for assigning the valuations they did to the relevant parcels.[4]  It is also reasonable to expect expert testimony to be

---

[4] In particular, defendants point to David Pierce, Bancorp's chief financial officer; Phillip Barnhouse, PBI's chief financial officer; C. Bradford Harris, Bancorp's and PBI's former corporate counsel; auditors from Crowe Horwath, LLP, including Rick Ueltschy and Jason Stockton; OREO appraisers, including Jack Porter (defendant Porter's son); and Charles A. Vice, commissioner of the Kentucky Department of Financial Institutions, which entered into a

received on the issue of fair valuation, with the relevant areas of expertise involving the value of the relevant Kentucky real estate at the time, and the appropriateness of Bancorp's valuation methodology.

SBAV validly notes that the locations of Bancorp's expert and employee witnesses are entitled to limited weight in the § 1404(a) analysis.  Pl. Br. 16–17.  That is because the convenience of retained expert witnesses is unimportant, *see Babbidge v. Apex Oil Co.*, 676 F. Supp. 517, 520 (S.D.N.Y. 1987) ("The location of expert witnesses is entitled to little or no weight in deciding a transfer motion."), and because a party's employee witnesses are presumably available to testify in either venue, *see Glass v. S&M NuTec, LLC*, 456 F. Supp. 2d 498, 503–04 (S.D.N.Y. 2006).  However, even if defendants' employees are *available* to testify in the Southern District of New York, the likely necessity of a substantial number of defense employee witnesses increases the cost of litigating here:  "[T]he long-distance travel required [of employee witnesses] could impede trial in this district and would impose substantial expense on witnesses or the parties calling them.  Transfer will allow live trials at lesser expense, an important factor in determining whether to transfer a case."  *Id.*

Moreover, there is a likelihood of substantial testimony from the third-party fact witnesses (*e.g.*, auditors, appraisers) that Bancorp can realistically be expected to call, in its attempt to substantiate the reasonableness of, or factual basis for, the various valuations it assigned its Kentucky properties.  And SBAV does not credibly argue that it will call significant third-party witnesses of its own.  SBAV instead argues that it will call experts or employee witnesses of its own, *see* Pl. Br. 18, but the convenience of those persons is, for the very reasons

stipulated consent order with PBI.  *See* Def. Br. 4–5, 22; *see also* Bouvette Aff. ¶ 14 (listing additional members of the Crowe Horwath, LLP audit team); *id.* ¶ 16 (listing loan officers for particular OREO properties).  All of these potential witnesses reside in Kentucky.

given by SBAV, entitled to limited weight in the transfer analysis.  As to third-party fact

witnesses, SBAV represents that it would call at trial Kirk Wycoff, an investor involved in

Bancorp's private placement, and employees of Sandler.  *See* Pl. Br. 17–18.  But SBAV has not

offered a persuasive explanation of why the testimony of these persons is important.  It is

irrelevant to establish the representations made *to SBAV* (which, to be actionable, pursuant to the

parties' agreement, are limited to those in the SPA and the Letter Agreement).  And SBAV offers

only a conclusory claim that, and no concrete persuasive explanation why, Bancorp's

representations soliciting investment by other persons would bear on the veracity of Bancorp's

representations to SBAV.  *See* Tr. 33–36.

This factor, therefore, also favors transfer to Kentucky.

### 3.   Convenience of the Parties

The Court next considers the convenience of the parties.  "A defendant moving for

transfer must show both that the original forum is inconvenient for it and that the plaintiff would

not be substantially inconvenienced by a transfer," 15 Charles Alan Wright, et al., *Federal*

*Practice and Procedure* § 3849 (3d ed. 2007); such a showing favors transfer.  *See In re*

*Connetics*, No. 06 Civ. 11496 (SWK), 2007 WL 1522614, at *4 (S.D.N.Y. May 23, 2007)

(transferring a lawsuit to a more convenient venue for defendants where plaintiff would not be

considerably inconvenienced); *Ravenwoods Invest. Co. v. Bishop Capital Corp.*, No. 04 Civ.

9266 (KMK), 2005 WL 236440, at *5 (S.D.N.Y. Feb. 1, 2005) (convenience of parties

"weigh[ed] heavily in favor of transfer" where plaintiff's inconvenience would be "minor" in

comparison to the inconvenience that defendants would experience absent a transfer).  But, a

motion to transfer "should not be granted if all transfer would accomplish is to shift the

inconvenience from one party to the other." *Guardian*, 2011 WL 3678134, at *3 (citation omitted).

Here, each side invokes a forum-selection clause to argue that the other has waived its right to claim inconvenience.

SBAV contends that defendants have waived their right to argue that New York is an inconvenient forum by submitting, in two agreements other than the SPA, to a New York forum. The first is a Confidentiality Agreement entered into between Bancorp and the Clinton Group (SBAV's investment manager, *see* Am. Compl. ¶ 25) on June 6, 2010, before SBAV began its due diligence on the deal. *See* Arnold Aff. Ex. D. It provided that information shared over the course of due diligence for and execution of the private placement would be treated as confidential. As to a choice of forum, the agreement provides that "[a]ny disputes arising directly or indirectly under this agreement may be resolved before state or federal courts located in New York." *Id.* at 4. The second agreement is a Non-Disclosure Agreement, entered into between Bancorp and SBAV on March, 24 2011, at a time when the parties were negotiating a possible purchase by SBAV of real estate assets belonging to Bancorp. *See id.* Ex. R (the "NDA"). It provides that information disclosed by Bancorp to SBAV over the course of negotiations would be treated as confidential and not disclosed to third parties. As to a choice of forum, the agreement provides: "Each party irrevocably submits to the personal jurisdiction of the state and federal courts of the State of New York, County of New York, for any action concerning or relating to this Agreement or its subject matter, and irrevocably waives any objection to the forum on inconvenience or other grounds." NDA § 7.

SBAV's heavy reliance on these provisions, however, is misplaced. Neither agreement applies to this controversy. The Confidentiality Agreement applied to the narrower issue of the

terms on which due diligence data would be shared with SBAV prior to the capital raise. The

NDA applies to a separate potential business transaction that post-dated the capital raise by close

to a year. At argument, counsel for SBAV argued that the language of the NDA to the effect that

defendants "irrevocably waive[]" any objection to a New York forum on grounds of

inconvenience applies to *all* potential controversies between these parties. *See* Tr. 44–46. But

that claim is quite unpersuasive. As an initial matter, only Bancorp is a party to the NDA, so

plaintiff's counsel's reasoning does not apply at all to the other three defendants. *See* NDA at 1,

5. Moreover, the NDA's forum selection clause, by its terms, applies to "any action concerning

or relating to *this Agreement* or its subject matter," not to all controversies between the parties.

SBAV has not offered any reason, let alone evidence, indicating that the parties intended it to

apply retrospectively to controversies arising under the SPA, which had been entered into the

previous year. The forum selection clauses on which SBAV relies, therefore, have little

relevance here. They reflect an acknowledgment that Bancorp was prepared to go forward with

a New York forum to resolve other discrete controversies, but they cannot be read to suggest

acquiescence to a New York forum as convenient to resolve the claims raised here under the

SPA.

The SPA, in fact, contains its own forum-selection clause—on which defendants rely in

this motion. It provides:

> Each party agrees that all Proceedings concerning the interpretations, enforcement
> and defense of the transactions contemplated by this Agreement and any other
> Transaction Documents . . . may be commenced on a non-exclusive basis in the
> Kentucky Courts. Each party hereto hereby irrevocably submits to the non-
> exclusive jurisdiction of the Kentucky Courts for the adjudication of any dispute
> hereunder or in connection herewith or with any transaction contemplated hereby
> or discussed herein (including with respect to the enforcement of any of the
> Transaction Documents), and hereby irrevocably waives, and agrees not to assert
> in any Proceeding, any claim that it is not personally subject to the jurisdiction of

any such Kentucky Court, or that such Proceeding has been commenced in an improper or inconvenient forum.

SPA § 6.8.

This clause unambiguously applies to this lawsuit. It reflects a commitment by SBAV not to challenge Kentucky as a forum for this lawsuit, including on grounds of inconvenience. To be sure, the agreement does not foreclose a case based on the SPA from proceeding in a different forum. But the SPA's forum selection clause favoring Kentucky deserves significant weight. *See Ramada Franchise Sys., Inc. v. Cusack Dev., Inc.*, No. 96 Civ. 8085 (MGC), 1997 WL 304885, at *3 (S.D.N.Y. June 6, 1997) ("In any event, even non-exclusive forum selection clauses carry significant weight in determining whether to transfer venue."); *id.* (collecting cases); *Häagen-Dazs Shoppe Co., Inc. v. Born*, 897 F. Supp. 122, 125 (S.D.N.Y. 1995) (citations omitted) ("In deciding whether to transfer venue, forum selection clauses are afforded considerable weight. The permissive nature of the forum selection clause need not affect the weight it is given."); *JSP Int'l v. Tri-Tech Grp., Inc.*, No. 95 Civ. 2422 (RPP), 1995 WL 413299 (S.D.N.Y. July 13, 1995) ("[T]he existence of a [permissive, rather than mandatory] forum selection clause is a 'significant factor' that must be weighed in considering the issue of the interests [of] justice." (citation omitted)).

Accordingly, based on the parties' mutual consent to a Kentucky forum, this factor favors transfer to the Western District of Kentucky. The Court also notes that there are four defendants (all based in Kentucky) and one plaintiff (based in New York), and that the issue likely to elicit the bulk of the testimony at trial (the veracity of and factual basis for Bancorp's representations) is more apt to turn on the accounts of Kentucky-based employees of Bancorp rather than those of New York-based employees of SBAV. This, too, favors transfer.

### 4.   The Forum's Familiarity with Governing Law

The forum's familiarity with governing law favors the Western District of Kentucky. That is because, by its terms, the SPA (and the Letter Agreement by incorporation) is governed by Kentucky statutory and common law.  *See* SPA § 6.8.  A Kentucky court will be more familiar with this body of law than this Court.  To be sure, on the record before the Court, it is not clear whether, or to what degree, the relevant principles of Kentucky law will materially depart from New York's.  And this factor is "one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved."  *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004).  Nevertheless, this factor, albeit of limited importance, weighs slightly in favor of transfer.

### 5.   Trial Efficiency and Interests of Justice

The factor of trial efficiency and the interests of justice favors transfer, largely for the reasons discussed above.  A Kentucky forum is, on the whole, more convenient for the relevant witnesses.  Importantly, too, transferring the case to Kentucky ensures that it can proceed against all defendants in a single forum.  If it were to stay in the Southern District of New York, there is a substantial possibility that the claims against one or more individual defendants would have to be dismissed for lack of personal jurisdiction.  To vindicate its claims against all defendants, SBAV might then be compelled to pursue two separate actions.  SBAV does not, and in light of the SPA, cannot, contend that manifest injustice will result if this case is transferred.

### D.  Neutral Factors

The location of relevant documents and the relative ease of access to sources of proof do not materially favor either side.  Given electronic discovery, and absent any concrete illustration

of inconvenience to either side arising out of access to documents or other non-testimonial proof, this factor does not materially favor either venue.  *See Guardian*, 2011 WL 3678134, at *3.

Neither party has asserted that it would face undue financial hardship were the litigation to proceed in the other's preferred forum.  The factor of the relative means of the parties accordingly does not favor either side.

The factor of availability of process to compel the attendance of unwilling witnesses is also neutral.  Neither party has persuasively identified particular witnesses likely to present attendance challenges.  SBAV points to Wycoff and Sandler employees as potential witnesses and notes that they are within subpoena distance of the Southern District of New York, *see* Pl. Br. 17–18, but does not suggest that either would be unwilling to testify voluntarily.  Wycoff and two employees of Sandler, in fact, voluntarily submitted affidavits in connection with this motion.  Defendants, for their part, point to a former employee who lives in Kentucky, as well as their auditors, *see* Def. Br. 22, but have not persuasively shown that they would be unwilling to testify voluntarily.

### E.  Factor Favoring New York

#### 1.  Plaintiff's Choice of Forum

SBAV's choice of forum is the sole factor that favors retaining this lawsuit in this district. A plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test. *See, e.g.*, *Bukhari v. Deloitte & Touche LLP*, No. 12 Civ. 4290 (PAE), 2012 WL 5904815, at *5 (S.D.N.Y. Nov. 26, 2012) (collecting cases).

The other factors, however, considered together, decisively favor Kentucky.  And the presumption in favor of a plaintiff's choice of forum "does not apply in cases such as this one where there is little material connection between the chosen forum and the facts and issues of the

case." *Doll Factory*, 937 F. Supp. at 323; *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d

382, 401 (S.D.N.Y. 2010) (plaintiff's choice of forum merits less deference "where the

connection between the case and the chosen forum is minimal"). Here, as discussed above, the

locus of the events at issue and the most critical evidence are centered in Kentucky, and there is a

substantial question whether there would be personal jurisdiction in this district over individual

defendants Porter and Bouvette. SBAV's assent to the non-exclusive forum selection clause in

the SPA is further persuasive evidence that SBAV anticipated the possibility of litigating any

dispute as to the securities transaction in Kentucky. For these reasons, SBAV's choice of forum

now does not shift, or come close to shifting, the balance of factors so as to favor this District.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue pursuant to 28 U.S.C.

§ 1404(a) is granted. The motion to dismiss for lack of personal jurisdiction is denied without

prejudice. The Clerk of Court is directed to terminate the motion pending at docket number 34,

and to transfer this case to the Western District of Kentucky.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: July 10, 2013
New York, New York