UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-00710-TBR

SBAV, LP                                                                           Plaintiff,

v.

PORTER BANCORP, INC., PBI BANK, INC.,
J. CHESTER PORTER, and MARIA BOUVETTE                          Defendants.


PORTER BANCORP, INC.                                              Third-Party Plaintiff,

v.

CLINTON GROUP, INC.                                              Third-Party Defendant.


**MEMORANDUM OPINION**

This matter comes before the Court upon the Motion to Dismiss of Third-Party Defendant Clinton Group ("Clinton"). (Docket No. 136.) Third-Party Plaintiff Porter Bancorp, Inc., ("PBI"), has responded, (Docket No. 139), and Clinton has replied, (Docket No. 140). Fully briefed, this matter is ripe for adjudication. For the reasons explained below, the Court will GRANT Clinton's Motion.

**Factual Background**

This lawsuit originates from a 2010 Supplemental Private Placement whereby SBAV, LP ("SBAV") invested—and ultimately lost—$5 million in PBI Bank, Inc., ("the Bank"), a subsidiary of PBI. Prior to the investment, SBAV conducted due diligence by engaging in a series of meetings, discussions, and correspondence with various PBI officials. PBI also created a "virtual due diligence room," also known as a "data room," that reflected the financial condition of the Bank's accounts. PBI granted SBAV access to the data room. PBI also invited Clinton, SBAV's investment manager, to participate in these due diligence activities as SBAV's "investment adviser and agent." (Docket No. 128 at 3.) PBI offered Clinton the opportunity to conduct a robust investigation of the company, inviting

1

Clinton representatives to speak with PBI personnel and to examine documentation and properties associated with the Bank's portfolio.

Unbeknownst to SBAV, the Bank confronted rapidly deteriorating financial and regulatory conditions. According to SBAV, the Bank's losses totaled over $100 million from the time of the initial investment. (Docket No. 101 at 13.) Its share price plunged from $11.50 per share in July 2010 to less than $1.00 at the time that SBAV filed this action. (Docket No. 101 at 13.) In this lawsuit, SBAV contends that such financial malaise was not accurately communicated before it purchased the stock. (Docket No. 101 at 7.)

PBI now asserts third-party claims for contribution from Clinton. (Docket No. 128 at 4.) According to PBI, Clinton's alleged negligence contributed to SBAV's losses. Although PBI denies that it violated Kentucky's Blue Sky Law, it nonetheless argues that Clinton shares responsibility for any illegal distortions or omissions. (Docket No. 128 at 5.) Given Clinton's due diligence obligations, PBI reasons, Clinton was an agent who "materially aid[ed]" in the sale; therefore, Kentucky's Blue Sky Act renders it jointly and severally liable.

PBI further points to Kentucky's contribution statute, arguing that Clinton's negligence has proven on par with PBI's own: that is, it was of substantially the same character as PBI's alleged negligence. PBI contends that the two companies' distinct acts of negligence converged to create a unified harm to SBAV, yielding indivisible damages. Accordingly, PBI argues that it is entitled to contribution from Clinton.

**Legal Standard**

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed.

R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.' ' *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

## Analysis

Long before Kentucky adopted the doctrines of comparative negligence and joint and several liability, the Commonwealth recognized a statutory right to contribution. Ky. Rev. Stat. 412.030; *Deneger v. Hall Contracting Corp.*, 27 S.W.3d 775, 778-79 (Ky. 2000). Contribution allows a tortfeasor to seek payment from his fellow tortfeasors for a proportional share of the amount of the plaintiff's

judgment against him. *Degener*, 27 S.W.3d at 779. The right to contribution arises only where the parties are *in pari delicto*—that is, where they share equal fault for the plaintiff's injury. *See Brown Hotel v. Pittsburgh Fuel Co.*, 224 S.W.2d 165, 166 (1949). Such tortfeasors need not be "literal 50/50 partners in the plaintiff's injury." *Stanford v. U.S.*, 948 F. Supp. 2d 729, 744 (E.D. Ky. 2013). Rather, parties are *in pari delicto* when they are "guilty of concurrent negligence of substantially the same character, which converges to cause the plaintiff's damages." *Degener*, 27 S.W.3d at 778.

PBI alleges that Clinton neglected to exercise the requisite due diligence in examining the Bank. Had Clinton adequately engaged in this process, PBI claims, any questionable or outright false characterizations of the Bank's financial health would have been revealed. In PBI's alternate scenario, Clinton's intensified conscientiousness would have stopped the deal in its tracks, averting the consequences that SBAV would ultimately suffer. The lack of such attention, PBI reasons, therefore renders Clinton's alleged negligence "of substantially the same character" as that of PBI.

The Court cannot agree. The two actions are not concurrently negligent acts, but are instead "separate and independent actions of two fundamentally different characters." *Jackson v. Tullar*, 285 S.W.3d 290, 296 (Ky. Ct. App. 2007).[1] Clinton's alleged negligence is essentially different from PBI's purported misdeeds. PBI indisputably possessed and controlled the information at issue. The failure to provide a complete and accurate disclosure of the Bank's financial health, then, lies exclusively with PBI. Perhaps Clinton failed to provide sound investment advice; perhaps this failure may even constitute negligence, as PBI contends. Even so, such circumstances cannot cause Clinton to share "equal fault" with PBI.

PBI's Third-Party Complaint also suggests that Clinton violated its obligations to SBAV pursuant to agency principles, the terms of the parties' Investment Adviser Agreement, and federal statutes

---

[1] PBI contends that Kentucky cases concerning dram shop liability, including *Jackson*, are inapposite here. (Docket No. 139 at 4.) The Court disagrees, as *Jackon*'s holding concerning parties *in pari delicto* was based also on common law doctrines of comparative fault and apportionment. *Botkin v. Tokio Marine & Nichido Fire Ins. Co., Ltd.*, 956 F. Supp. 2d 795, 799 (E.D. Ky. 2013).

governing business ethics in the securities industries.  (Docket No. 128 at 5-6.)  The Court perceives no substantial allegations of fraudulent conduct by Clinton in the pleadings.      In any event, contribution's reach extends only to negligence claims; the doctrine finds no application to situations involving an intentional wrong.  *Sutton v. Morris*, 44 S.W. 127, 127 (Ky. 1898); *see* Ky. Rev. Stat. 412.030 ("Contribution among wrongdoers may be enforced where the wrong is a mere act of negligence and involves no moral turpitude.").  Should PBI's undeveloped contention prove correct, it is nonetheless not entitled to contribution from Clinton on claims that do not assert negligence.

Furthermore, Kentucky law has long held that if a principal suffers injury due to the actions of an agent who is "carrying out the duties of his employment in furtherance of the business and purposes of the . . . principal, the negligence of the servant or agent is imputed to the master or principal." *Louisville & N.R. Co. v. Tomlinson*, 373 S.W.2d 601, 603 (Ky. 1963) (citation omitted).  Accordingly, agency principles dictate that Clinton's allegedly negligent conduct must be ascribed to SBAV.  Clinton's actions and omissions—including any blunders—are binding upon SBAV.  SBAV, then, must contend with the consequences of any such errors.

The principal-agent relationship of SBAV and Clinton renders apportionment available:  that is, Clinton's mistakes, if proven, will lessen any recovery to which SBAV may be entitled.  Such apportionment forestalls a third-party contribution action.  *See Travelers Indem. Co. of Am. v. Waters Truck & Tractor Co., Inc.*, 2013 WL 5720333, at *2 (W.D. Ky. Oct. 21, 2013) (noting that apportionment generally obviates any claim for contribution among joint tortfeasors whose liabilities have been determined).  As a sister court in this district has opined, because a non-settling non-party need not be a party in order for damages to be apportioned, a third-party plaintiff generally lacks a claim for contribution. *See Hengel v. Buffalo Wind Wings, Inc.*, 2013 WL 3967941, at *7 (E.D. Ky. July 31, 2013).

Finally, PBI theorizes that the Kentucky Blue Sky Act creates a novel contribution claim.  Ky. Rev. Stat. § 292.480(4) provides, in relevant part:

> Every person who directly or indirectly controls a seller or purchaser liable under subsection (1) or (2) of this section, every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of a seller or purchaser who materially aids in the sale or purchase, **and every broker-dealer or agent who materially aids in the sale or purchase** is also liable jointly and severally with and to the same extent as the seller or purchaser . . . .

(emphasis added). The Act thereby imposes secondary liability upon those who control faulty purchasers or sellers as well as those who materially aid them. *Id.* The statute further specifies that contribution exists "as in cases of contract among the several persons so liable." *Id.*

PBI notes that the "aiding and abetting" clause does not contain the language in the preceding clause connecting liable parties to "seller[s] or purchaser[s] liable under [the Act]." Therefore, in PBI's reading, the statute requires only that PBI plead that Clinton acted as SBAV's agent and that Clinton materially aided in SBAV's purchase of securities. (Docket No. 139 at 6.) Simply put, PBI would render entities that assist a purchaser responsible for the scheme that hoodwinked them both.

The Court cannot agree with this understanding, which accords neither with the fundamental policy goals at the securities laws' core nor with common sense. The only Kentucky court that has commented upon liability under § 292.480(4) held that "any person who facilitates another person's securities fraud becomes vicariously liable absent an affirmative demonstration of good faith." *Senior Healthcare Ins. & Fin. Serv., Inc., v. Clementi*, 2007 WL 1784158, at *1 (Ky. Ct. App. 2007). *Clementi* offered no guidance in determining when one has facilitated the securities fraud of another. However, the relevant caselaw explains that Kentucky's Blue Sky Act "impose[s] aiding and abetting liability on those who materially assist others in violating the state's securities laws." *Clayton v. Heartland Resources, Inc.*, 754 F. Supp. 2d 884, 897 (W.D. Ky. 2010).

Clinton cannot be said to have aided or abetted PBI, as Clinton neither knew of the misrepresentation nor provided assistance in furtherance thereof. *See* Restatement (Second) of Torts § 876 (1979) (explaining that one is subject to liability for another's tortious conduct if he acts in concert or

pursuant to a common design with the tortfeasor; gives substantial assistance or encouragement towards a known breach of duty; or gives substantial assistance to accomplish a tortious result and his own conduct constitutes a breach of duty); *see also Bariteau v. PNC Finc. Servs. Grp.*, 285 Fed. App'x 218, 224 (6th Cir. 2008) (unpublished) ("Kentucky recognizes a claim for aiding and abetting tortious conduct . . . and its courts rely on the Restatement (Second of Torts § 876 in describing the contours of the claim.") (citations omitted)).  Neither the Restatement nor Kentucky caselaw suggests that aiding and abetting liability should be imposed upon the victim or its agent under such circumstances.

In PBI's reading, control persons must be affiliated with a duplicitous purchaser or seller, while "aiders and abettors" may be associated with either those participating in the scheme *or* their victims. Moreover, as Clinton notes, the extension of PBI's logic would yield bizarre outcomes, holding jointly and severally liable any number of SBAV personnel who participated in the purchasing process—including partners, directors, and employees.  A more considered view of the statute does not so starkly distinguish between the standards of liability for these two actors.  Instead, it appears that the legislature attempted to expand the pool of potentially liable actors, affording coterminous liability to each of them. Because the Court cannot accept PBI's interpretation of the Blue Sky Act, its claims grounded therein must be dismissed.

**CONCLUSION**

For the reasons set forth above, the Court will GRANT Clinton's Motion to Dismiss (Docket No. 136).  A separate Order will issue concurrently.