UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| SBAV LP, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:13-CV-710-R |
| | ) | |
| -v- | ) | |
| | ) | |
| PORTER BANCORP, INC., BETTY W. PORTER, | ) | |
| as Executrix of the Estate of J. Chester Porter, and | ) | |
| MARIA BOUVETTE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF SBAV LP'S OPPOSITION TO BANK AGENCIES'**
**MOTION TO INTERVENE AND TO STAY**

In their motion to intervene and to stay proceedings (ECF# 201) ("Motion to Stay"), the

Board of Governors of the Federal Reserve System and the Federal Deposit Insurance

Corporation (together, the "Agencies") do not proffer any arguments which have not already

twice been made by defendant Porter Bancorp, Inc. (the "Bank")[1] and twice rejected by this

Court.  While the Sixth Circuit has indicated that the Agencies be given a voice in disputes

involving the confidentiality of bank examination documents, that voice adds nothing new to the

debate here.  After extensive briefing, this Court has already held that:

- The confidentiality of documents prepared in connection with joint federal/state bank examinations is governed by Fed. R. Evid. 501 and K.R.S. §§ 286.3-450(5) and 286.3-470 rather than the federal bank examination privilege.

- Even if the federal bank examination privilege were controlling, it does not apply *ab initio* to the vast quantities of factual information withheld by the Bank.

---

[1] Abbreviations in this Opposition have the same meaning as in SBAV's Response to Defendant Porter Bancorp, Inc.'s Objections to Order Compelling Production of Bank-Examination Documents (ECF# 185).  The Board of Governors of the Federal Reserve System is referred to herein as the "Board."

4819-8603-5235.

- Even if the federal privilege would otherwise have protected certain evaluative bank examination reports, good cause exists to override the qualified privilege because:

  o the information SBAV seeks is highly relevant to the issues in this matter given that the Bank repeatedly referred to the examination reports when inducing SBAV to buy its securities and throughout this litigation,

  o the Bank has failed to identify how SBAV may obtain information about the examination reports through other means,

  o the litigation is serious, given SBAV's detailed allegations that the Bank raised large amounts of capital through duplicity and deceit, and

  o the examiners' interest in preserving candor in bank examinations was overridden by the public's interest in the production of highly-relevant evidence which the Bank itself has put into play.

- Even if the federal bank examination privilege were controlling, binding Sixth Circuit precedent holds that SBAV need only follow Fed. R. Civ. P. 34, and not the *Touhy* administrative process, to obtain the information.  Moreover, SBAV was *not* required to notify the Agencies of its discovery requests, but the Bank was.

These holdings conclusively resolve all the issues raised in the Agencies' Motion to Stay.

Most important, it appears *the Bank refused to notify the Agencies of SBAV's October 2013 requests for almost one and a half years*, despite being required to do so by law "promptly" upon receipt of the requests.  And even after the Agencies learned of SBAV's requests, they waited for months before filing their instant Motion to Stay.  The motion comes too late, and only reinforces the policy rationale for the Sixth Circuit's conclusion that Rule 34 provides the appropriate route to obtain such documents in a federally-litigated matter:  the administrative route urged by the Agencies would add months, if not years, to this dispute; it would provide an inferior means of resolving the issues; and would achieve nothing but further delay and expense.

SBAV's 18-month saga of attempting to obtain relevant bank documents must end, and it must end now.  The Agencies' Motion to Stay should be denied, the Bank should be required to finally produce the challenged information immediately, and SBAV should be reimbursed its expenses incurred in fighting yet another, unnecessary, round in this battle.

2

## FACTUAL BACKGROUND

SBAV filed this lawsuit nearly two and a half years ago, and served the discovery requests seeking bank examination and other information now at issue in October 2013 (the "Requests"). While the Bank has now finally produced some documents (many of which are duplicative) in response to the Requests, it has withheld an unknown quantity – likely numbering in the thousands – of documents and produced redacted versions of hundreds of other documents on spurious assertions of the bank examination privilege. The Bank has also refused to respond to interrogatories seeking only factual information relating to the dates and persons involved in the various bank examinations undergone by the Bank, and it has effectively shut down the production of documents by third parties in response to SBAV's subpoenas, all again under the guise of the bank examination privilege.[2]

Since June 2014, SBAV has protested the scope of the Bank's bank examination privilege objections and tried to negotiate a resolution with the Bank and the third parties, but has been repeatedly thwarted by the Bank's intransigence. SBAV filed its first Motion to Compel on September 23, 2014; multiple rounds of briefing on that motion were completed on December 15, 2014.[3] Magistrate Judge Whalin issued his Order on January 16, 2015 granting SBAV's motion in all material respects (ECF# 179 ("MJ Order")). The Bank filed an Objection to the MJ Order on January 30, 2015 (ECF# 181), followed by multiple rounds of briefing which were completed by March 3, 2015. This Court issued its Order affirming the MJ Order in all

---

[2] For instance, the Bank has required its auditors to withhold 253 documents on grounds of the bank examination privilege, yet has refused to provide the detailed privilege log required by Fed. R. Civ. P. 45 so that SBAV can test those assertions. In addition, the Bank has prevented the third party consultant who wrote several damning reports from producing all but a handful of virtually-irrelevant documents in response to SBAV's subpoena.

[3] Additional briefing on SBAV's motion was filed in light of the Bank's November 14, 2014 disclosure that on October 17, 2014 the Department of Justice notified PBI Bank that it was being investigated for "possible violations of federal laws . . . related to false bank entries, bank fraud and securities fraud." *See* SBAV's Supp. Mem. (ECF# 162-1) at 3. SBAV has now learned that the Bank knew of the DOJ investigation before its October 17th reply brief on its Motion to Compel was filed, notwithstanding its counsel's representation to the Court that they did not.

3

material respects on March 31, 2015 (ECF# 197, 198 ("DJ Order")).  During this entire period, the Bank steadfastly refused to disclose to SBAV and to this Court whether it had notified the Agencies about the Requests despite its statutory obligation to do so.[4]  *See* DJ Order at 16 (noting the "dearth of information on the record concerning whether Bancorp has notified federal regulators of SBAV's requests and the Court's order compelling production").

Now, it appears, the Bank did not notify the Agencies of SBAV's Requests or even that the issue was being briefed before this Court *until approximately January 2015*:  according to the Agencies, they did not learn of the controversy until after the Magistrate's ruling on January 16, 2015.  *See* Mem. in Support of Motion to Stay ("Mem.") (ECF# 201-1) at 4 ("At no point . . . did Bancorp notify the agencies that the matter was being briefed for decision by the Magistrate") and at 8 (the Agencies were not given "the opportunity to become involved in the matter prior to the Magistrate's ruling").  Even then, the Agencies waited until now before moving to intervene and to stay all proceedings regarding the bank examination privilege.

## ARGUMENT

### I.      The Agencies' Request To Intervene Should Be Denied As Untimely.

As a threshold matter, the Agencies' request to intervene should be denied in light of the inordinate delay and the significant prejudice to SBAV if they were allowed to intervene and the stay granted.  The Sixth Circuit has articulated a five-point test for timeliness of intervention under Fed. R. Civ. P. 24(a):  (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure to promptly intervene after they knew

---

[4]  At the first judicial conference on this issue, held before Magistrate Judge Whalin on September 3, 2014, the Bank refused to state, when questioned, whether it had notified the Agencies about the Requests.  After multiple rounds of briefing over the following six months, the Bank still refused to disclose that information.

or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (denying motion to intervene as untimely); *see also Rouse v. Simpson*, Civil Action No. 5:08CV-P123-R, 2010 U.S. Dist. LEXIS 55434 (W.D. Ky. June 7, 2010) (Russell, J.) (same).

Here, the Requests were served in October 2013, and the Bank was required under 12 C.F.R. §§ 309.7(b) and 261.23(a) to "promptly" notify the Agencies of the Request at that time. It did not.  The issues now raised by the Agencies have been briefed, at exhaustive length, two separate times over the last five months.  In the meantime, discovery has virtually ground to a halt due to the vast amount of information the Bank has withheld (from its files and the files of third parties) on specious assertions of the bank examination privilege.  The delay caused by the Bank's refusal to notify the Agencies, combined with its overreaching on the scope of the privilege, has severely prejudiced SBAV in its ability to prosecute this action.

SBAV recognizes the Agencies' standing to intervene, as well as the Sixth Circuit's observation that the Agencies be given an opportunity to be heard.  *In re Bankers Trust*, 61 F.3d 465, 472 (6th Cir. 1995).  Where, however, (1) those concerns have already been propounded by the Bank and addressed by the Court, and (2) they come well after a reasonable time for intervention, they should be denied.

## II.    SBAV Was Not Required To Request Bank Examination Documents From The Agencies, Under Settled Sixth Circuit Law.

Even if allowed to intervene, the Agencies' main argument – that SBAV must pursue the Agencies' administrative *Touhy* processes before seeking relief from this Court under the Federal Rules of Civil Procedure – has long been put to bed.  As an initial matter, the federal administrative process does not even come into play if the Kentucky confidentiality statute,

5

K.R.S. § 286.3-470, controls.  This Court has twice held that it does.  MJ Order at 13-19; DJ Order at 7-12.[5]

More to the point, even if the federal bank examination privilege applied, the Sixth Circuit has definitively held that private litigants like SBAV need not pursue such documents through the Agencies' administrative regulations, and need only comply with the Federal Rules of Civil Procedure.  *Bankers Trust*, 61 F.3d at 469-70; MJ Order at 22-23; DJ Order at 14-15.  While the Agencies (like the Bank before them) cite to contrary decisions in other jurisdictions, Mem. at 18 n.7, they (like the Bank before them) ignore the fact that there is a circuit split on this issue in which the Sixth Circuit lands squarely against them.  *See Wultz v. Bank of China, Ltd.*, No. 11 Civ. 1266 (SAS), 2013 U.S. Dist. LEXIS 51181, 2013 WL 1453258, at *2 (S.D.N.Y. Apr. 9, 2013) (discussing circuit split); *Bankers Trust*, 61 F.3d at 469.  Undaunted, the Agencies (like the Bank before them) contend that the Court "mistakenly" applied *Bankers Trust*, since the plaintiff in that case submitted a *Touhy* request to the Board before approaching the Court. Mem. at 19.  Again, however, this Court has twice considered and rejected that very argument, and has instead applied the straightforward holding of *Bankers Trust*, *i.e.,* that SBAV need only comply with the Federal Rules of Civil Procedure here regardless of the Agencies' *Touhy* regulations.  MJ Order at 23; DJ Order at 16.

The propriety of the Sixth Circuit's approach is reinforced by the fact that this Court – and not the Agencies – is by far in the best position to rule on the criteria necessary to determine whether the bank examination privilege should apply and, if appropriate, whether "good cause"

---

[5]  The Agencies mistakenly assert that K.R.S. § 286.3-470 does not apply to reports prepared jointly by the FDIC and KDFI.  *See* Mem. at 9.  To the contrary, the Kentucky statute *explicitly* provides that such joint reports are subject to the protections of K.R.S. § 286.3-470.  *See* K.R.S. § 286.3-450(5) (that information "produced or provided" in connection with joint federal-state examinations "shall be considered confidential as provided in KRS 286.3-470"); *see also* MJ Order at 17-18 and DJ Order at 9 (both holding that the Kentucky statute applies to joint KDFI-FDIC examination materials).

4819-8603-5235.

exists to override it.  How, for example, are the Agencies better situated than this Court to determine whether "good cause" exists because the information sought by SBAV is relevant to the issues in the litigation (given that the Bank repeatedly referred to it during the parties' initial negotiations and throughout this litigation), or whether there exists other evidence available by which SBAV could prove its case without resort to such information, or whether the litigation and the issues involved in it are "serious"?  From their far-removed perch, the Agencies would have little basis upon which to rule on these and the other issues decided by this Court based on its immersion in the facts of this case over the course of many years, many court conferences, and many rounds of briefing.  Indeed, the Agencies' own Motion makes this point loud and clear:  in it, they suggest they would have ruled differently than this Court despite having no connection to this case whatsoever.  *See* Mem. at 20 n.8.  There is thus no benefit – and much harm – to requiring SBAV to undergo that lengthy and expensive process, when at the end of the day it would only result in an administrative decision which would be rejected by a federal court which has already adjudicated these issues.  Far from supplying a process by which the Agencies "could have provided the information SBAV seeks without the need for Court intervention," Mem. at 15-16, the Agencies' approach instead imposes more cost, delay, and injustice which the Sixth Circuit was right to instruct this Court to avoid.

III.    **Regardless Of Whether Kentucky State Law Or Federal Common Law Applies, The Bank Examination Documents Must Be Produced.**

The Agencies also engage in a convoluted argument about how the Court's decisions on the bank examination privilege are a product of forum-shopping, and that this dispute needs to be stayed because both the Magistrate and District Judges inappropriately applied the Kentucky confidentiality statute to the bank examination documents at issue here.  Mem. at 9-13.  Both of these arguments fail.  First, SBAV did not forum-shop; it simply filed suit in the forum most

7

convenient to it, *i.e.*, the New York state court.  The rest of the procedural history – removal to the Southern District of New York, then transfer to the Western District of Kentucky – was the *Bank*'s doing, not SBAV's.

Second, the Agencies' choice of law argument is misguided and irrelevant.[6]  Neither the Magistrate Judge nor the District Judge ended his analysis with the conclusion that the Kentucky bank confidentiality statute governed the outcome here.  Rather, both went on to analyze the issue under the federal bank examination privilege, and both held that even under the federal privilege the Bank's substantive claims still failed:  they concluded that (1) *ab initio,* the privilege does not protect the vast quantities of factual information withheld by the Bank from its production and the productions of other third parties, and (2) good cause exists to override the privilege under the criteria established by the Sixth Circuit.

## CONCLUSION

In short, *the Bank* was required by law to notify the Agencies of SBAV's request for bank examination materials in its possession, custody, and control, but appears to have refused to do so for almost a year and a half.  *SBAV* was not required by law to do anything other than follow Rule 34, which it did.  Then, upon receiving notice of the Requests and the fact that the bank examination privilege issue was being briefed for a second time before the District Judge, the Agencies apparently waited to see what the final decision was before deciding whether to intervene.  Their arguments, however, have already been extensively considered and rejected twice by this Court under binding Sixth Circuit precedent.

---

[6] For starters, the Agencies mistakenly claim they were somehow "divested" of their ability to assert the federal bank examination privilege because the case was first brought in New York state court.  Mem. at 11-12.  Yet regardless of whether the case was originally filed in state court (in Kentucky or New York) or as a diversity case in federal court (in Kentucky or New York), Kentucky privilege law would still apply under Fed. R. Evid. 501.

8

It is time to move on.  Plaintiff SBAV LP respectfully requests that this Court deny the Motion; order the Bank to produce the requested information within 30 days; and order that SBAV be reimbursed for its costs incurred in briefing this issue yet again, given that the instant motion is duplicative and could have been completely avoided had the Bank or the Agencies timely acted.

Plaintiff SBAV LP further respectfully requests that this Court order that any Reply be filed within 10 days from the date this Opposition is filed, so that this matter is ripe for decision by the Court without further unnecessary delay.

Dated:  April 24, 2015                    Respectfully Submitted,

                                          /s/ Beth I. Z. Boland_____
                                          Beth I. Z. Boland (*admitted pro hac vice*)
                                          Jaclyn V. Piltch (*admitted pro hac vice*)
                                          FOLEY & LARDNER LLP
                                          111 Huntington Avenue
                                          Boston, MA 02199
                                          Tel: (617) 342-4000
                                          Fax: (617) 342-4001
                                          *bboland@foley.com*
                                          *jpiltch@foley.com*

                                          Jonathan H. Friedman (*admitted pro hac vice*)
                                          FOLEY & LARDNER LLP
                                          90 Park Avenue
                                          New York, NY 10016
                                          Tel: (212) 682-7474
                                          Fax: (212) 687-2329
                                          *jfriedman@foley.com*

                                          *and*

                                          John S. Reed
                                          Trevor L. Earl
                                          REED WEITKAMP SCHELL & VICE PLLC
                                          500 West Jefferson Street, Suite 2400
                                          Louisville, KY 40202
                                          Tel: (502) 589-1000

9

*jreed@rwsvlaw.com*
*tearl@rwsvlaw.com*

*ATTORNEYS FOR PLAINTIFF SBAV LP*

4819-8603-5235.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 24, 2015.

/s/ Beth I. Z. Boland
Beth I. Z. Boland

11

4819-8603-5235.