UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| SBAV LP, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 3:13-CV-710-R |
| | ) |
| -v- | ) *Electronically Filed* |
| | ) |
| PORTER BANCORP, INC., BETTY W. PORTER, | ) |
| as Executrix of the Estate of J. Chester Porter, and | ) |
| MARIA BOUVETTE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY IN SUPPORT OF PLAINTIFF SBAV LP'S MOTION TO
MODIFY AND CLARIFY THE COURT'S MAY 6, 2015 ORDER**

In its Response to Plaintiff SBAV LP's Motion to Modify and Clarify the Court's May 6, 2015 Order ("Opposition" or "Opp."), Defendant Porter Bancorp, Inc. (the "Bank") argues that SBAV should be required to file motions to compel now against all third parties upon whom it has served subpoenas, or be forever foreclosed from doing so, even though many third party production issues have not matured into full-blown disputes or are otherwise not ripe for adjudication.  The Bank cannot have it both ways:  it cannot insist, as it has, that SBAV refrain from seeking information from third parties until such time as SBAV has completed its review of the Bank's own production on the off-chance that the Bank *may have* produced those materials somewhere therein, yet simultaneously ask that this Court impose an expedited deadline for SBAV to determine that the Bank's production (which is not yet completed) is deficient, negotiate with third parties about producing the missing documents, determine whether third parties will in fact make such productions, and then draft any necessary motions in the event there is a stalemate.[1]

---

[1]      For these same reasons, the Bank's statements regarding SBAV's alleged failure to follow up with certain third parties (e.g., Credit Risk Management and Sandler O'Neill) are of no moment.  The Bank cannot complain that SBAV

Nor is it appropriate for the Bank to request finality on the issue of third party subpoenas, when the Bank itself has asked those third parties to withhold large amounts of information under the guise of the bank examination privilege. The Bank has made clear that third parties have bank examination materials in their possession which it has instructed them not to produce on grounds of privilege; SBAV should not be prevented from seeking these materials if and when the Bank is ordered to produce those in its possession. Because SBAV is continuing to attempt to resolve issues with the third parties who are not the subject of its Motion to Modify (or its currently pending motion to compel production by All County Realty), SBAV respectfully submits that the Bank's request be denied.

If the Bank had limited itself to this argument, SBAV's reply memorandum would end here. However, the Bank has made a number of serious accusations against SBAV, claiming that SBAV has "assert[ed] unwarranted attacks" against it by informing the Court that the Bank has interfered with third party production. *See* Opp. at 3-4. The Bank has also called SBAV "false," "disingenuous," and "borderline dishonest" for asserting that discovery in this case has been significantly delayed by the Bank's actions. *Id*. at 3; Reply in Support of Defendant Porter Bancorp, Inc.'s Motion to Stay at 2 (ECF #213). Lest the Court take to heart the Bank's accusations, SBAV respectfully provides the following examples of such obstruction and delay in support of its statements regarding the Bank's discovery conduct:

1. SBAV issued subpoenas to a number of third parties in May 2014, and thereafter engaged in discussions with those third parties regarding the production of responsive documents. Initially, those discussions moved forward. Almost in unison, however, the third parties abruptly changed course and stated they would not produce any documents which might also be in

---

respected its wishes by attempting to review the Bank's production before coming back to third parties with final proposals regarding responsive documents to be produced.

2

possession of the Bank, or documents over which the Bank asserted privilege. The unanimity in timing and in message, along with the fact that the Bank has now insisted on being directly involved with SBAV's negotiations with a number of the third parties, suggests that the third parties were contacted by the Bank with instructions to take that position.

2. In turn, the process of determining which documents were being produced by the Bank and which ones were not has itself prompted significant delay and disputes among the parties. For example, in August 2014 the Bank stated it would produce documents in its possession relating to third-party subpoena recipients Sandler O'Neill, Crowe Horwath, Patriot Financial Partners, Professional Bank Services ("PBS"), IBP 1, LLC, IBP 2, LLC, All County Realty,[2] and Mountjoy Chilton Medley. After that date, several of these third parties informed SBAV that it could not seek responsive information from them until the Bank completed its production. Not only does it appear that the Bank's production of documents relating to such third parties is still incomplete,[3] but neither the Bank nor these third parties have specified which documents the Bank will be producing, nor identified where they are within the Bank's production.

3. Similarly, the Bank has inserted itself into communications between SBAV and third parties and curtailed productive discussions between them. For instance, the Bank instructed Crowe Horwath to withhold documents from its initial production on grounds of privilege, but did not

---

[2] SBAV's motion to compel the production of documents responsive to the subpoena issued to All County Realty is already before the Court, and thus is not affected by the Motion to Modify.

[3] For instance, the Bank has undertaken to produce documents responsive to the subpoenas directed to IBP 1, LLC and IBP 2, LLC, which requested, *inter alia*, documents reflecting the reasons for their formation and the selection of loans to be transferred to them. The Bank has produced only four organizational documents for these two entities, and insists there are no additional documents to be produced, other than the possibility that deeds-in-lieu-of-foreclosure or other individual transfer documents are scattered throughout its loan files. In addition, the Bank has produced only some, but not all, correspondence between it and other third parties, or has produced internal Bank commentary on that correspondence but not the underlying correspondence itself.

4813-5049-6292.

provide a privilege log.[4] When SBAV asked the Bank for a privilege log for the Crowe production, the Bank refused to provide one, stating it was "unaware of any authority requiring Porter to produce such a log." The subsequent letter SBAV sent to Crowe requesting the log and providing supporting authority for the request was answered not by Crowe, but by *the Bank*, who requested *more* authority for why the log was necessary. After this issue was conferenced, the Bank finally agreed to provide a privilege log for the Crowe production, but only in connection with the privilege log for its own, much larger production. The Bank still has not produced that privilege log.

4. The Bank has also inserted itself into SBAV's negotiations with third party PBS, which is a critical witness in this matter. As this Court is aware, PBS conducted independent loan file reviews and a management evaluation shortly after SBAV purchased the Bank's securities, and issued several reports which were highly critical of the bank's loan valuation process and its management. At first, PBS stated it would produce no documents until SBAV narrowed its subpoena, and on the additional grounds – presented by Bank counsel – that there were Bank loan files in PBS's possession that should properly be produced, if at all, by the Bank. When SBAV attempted to learn what types of documents were in PBS's possession, the Bank intervened; in the telephonic meet-and-confer on that issue, the Bank interrupted PBS's explanation of the potential scope of production, refusing to allow SBAV to continue "information-gathering" unless SBAV first agreed to narrow its subpoena. When SBAV asked the Bank's counsel directly whether PBS had any loan files in its possession, he was unable to answer – and admitted that, despite raising this as a reason why PBS would not produce documents, neither he nor anyone else from the Bank had reviewed PBS's documents to see if it was accurate. After the call, PBS informed SBAV that it and the Bank had unilaterally determined which documents it would produce in response to SBAV's

---

[4] A list of beginning Bates numbers was provided for each withheld document, together with an indication that they were withheld for attorney-client privilege, or the bank examination privilege, or both, but providing no other identifying information, e.g., no date, author, title, or description for any of the documents.

subpoena, as opposed to producing those documents actually called for by the subpoena.[5] PBS has declined to produce some number of unidentified "internal Bank documents" in its possession; to the best of SBAV's very limited knowledge, these documents have not been produced by the Bank.

5. As a result of the Bank's intercession into third party productions, virtually no documents have been produced by third parties. Patriot, for instance, has produced only 128 documents. The IBP entities have produced only 4. Even PBS's production comprises only 158 electronic documents; its hard copy production fills fewer than three bankers' boxes.

6. With respect to its own production, the Bank also initially refused to produce documents relating to certain borrower litigations identified by SBAV, though they are clearly relevant to this litigation. Even after SBAV moved to compel and the Court ordered their production, the Bank still refused to produce some of the specific loan files whose production the Court had ordered. SBAV was forced to raise this issue again with the Court, and only after being ordered for the second time to produce the remaining files did the Bank do so.

7. As the Court is aware, it has taken almost a year for the Bank to agree to produce certain additional loan files requested by SBAV. From approximately August 2014 through March 2015, SBAV proposed different ways in which the Bank could provide sufficient information for SBAV to identify a list of additional loan files; the Bank rejected each of these. Then, when SBAV presented a specific list of 33 borrower relationships whose loan files it requested – some of which overlapped with loan files already produced pursuant to other document requests – the Bank refused to negotiate this issue unless and until SBAV reduced the requested number, effectively requiring SBAV to bid against itself simply to get the Bank to the table. Even after the Court ordered the

---

[5] These documents were produced to SBAV on May 20, 2015, after SBAV filed its Motion to Modify, and SBAV is in the process of reviewing them. SBAV anticipates additional communication with PBS once it has reviewed the documents produced to date, in a final effort to reach compromise on the scope of email production, before SBAV can evaluate whether a motion to compel is necessary.

parties to reach resolution on this issue, the Bank delayed or outright refused several requests by SBAV to meet-and-confer.[6]

8. The Bank has also insisted that SBAV agree not to seek any bank loan file materials which might be in the possession, custody or control of third parties. The Bank, however, has refused to identify what those loan file materials might encompass, other than "appraisals" and "internal bank loan review documents." Even though SBAV agreed that no truly duplicative material need be produced by third parties, the Bank rejected SBAV's proposal that the nature and volume of "loan file materials" being withheld be disclosed to SBAV so that it could effectively determine whether it agreed with the decision to withhold them.

9. It also appears that parts of the loan files produced to date may still be missing. The Bank has represented that its policy is to keep loan file documents in a centralized repository, and that it does not believe it is obligated to confirm with all relevant custodians that all files were in fact uploaded to that repository. SBAV has taken the Bank at its word, but also indicated it would reserve its rights to request additional files maintained outside the central repository should it become apparent that they do, in fact, exist. The Bank has stated it will object to any such requests.

10. The Bank's recalcitrance has extended to SBAV's requests for even the most clearly-relevant and easily-accessible documents. For instance, on November 26, 2014, the Bank produced a letter it had received from the U.S. Department of Justice detailing the Department's investigation of the Bank for false bank entries, bank fraud, and securities fraud relating to the Bank's apparent efforts intended to delay or avoid disclosure of the Bank's asset quality. The Bank, however, refused to produce the Department's cover email to its letter; it took SBAV multiple emails and telephone calls over the course of several months before the Bank finally agreed to produce it.

---

[6] For instance, in between the April 2, 2015 and May 4, 2015 telephonic conferences with Magistrate Judge Whalin, SBAV made multiple requests to set up a telephone conference regarding the loan file issue, but the Bank refused to meet.

4813-5049-6292.

11. The Bank has also taken a legally-unsupported, expansive position on what documents and information it has withheld on the grounds of the bank examination privilege. For instance, the Bank still will not respond to Interrogatories requesting purely factual information, like the names of the persons at the Bank who corresponded with examiners, or the dates on which those communications occurred. As this Court has now twice held, none of this information is protected by the privilege, even if the privilege were found to apply. Nor has the Bank produced a privilege log reflecting the precise documents it has withheld under guise of the privilege.

12. While the Bank has produced a number of documents to date – the majority of which have been produced since November 2014, over 13 months after SBAV issued its document requests – it still has not concluded its production. SBAV's ongoing review of the production indicates that the Bank has produced large quantities of the same documents multiple times. The parties' agreed-to ESI protocols require that documents be de-duplicated before production, which the Bank apparently has failed to do; the Bank also has not identified which documents it has produced on behalf of third parties, nor where within its production those documents can be found. The Bank's failure to do so has made review of the documents produced extremely cumbersome, and its representations about the volume produced vastly overstated.

* * * * *

For these and other reasons, SBAV believes that the Bank continues to attempt to improperly shield responsive information in its own and in third parties' possession, custody, or control from production, all the while without providing any information to SBAV as to the type or amount of the information withheld. As such, SBAV believes it is appropriate to conclude that the Bank has unduly interfered with third-party document production and has unduly delayed discovery in this matter, notwithstanding the Bank's accusations that SBAV has been "borderline dishonest" in stating its conclusions in court filings.

7

## **RELIEF REQUESTED**

For the reasons stated herein and in its Motion to Modify, Plaintiff SBAV LP respectfully requests that this Court grant its Motion, clarify that Crowe Horwath and Professional Bank Services were the only "third parties" intended to be covered by the reference in paragraph 1 of the Court's May 6th Order, and allow SBAV thirty (30) days from the date Crowe and PBS certify that they have complied with their production obligations (either as requested in the subpoena or as agreed by the parties) to determine whether any motion to compel is necessary.  A revised Proposed Order is being tendered herewith for the Court's consideration.

Dated:  June 4, 2015                                         Respectfully Submitted,

/s/ Jaclyn V. Piltch
Beth I. Z. Boland (*admitted pro hac vice*)
Jaclyn V. Piltch (*admitted pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
*bboland@foley.com*
*jpiltch@foley.com*

Jonathan H. Friedman (*admitted pro hac vice*)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329
*jfriedman@foley.com*

*and*

John S. Reed
Trevor L. Earl
REED WEITKAMP SCHELL & VICE PLLC
500 West Jefferson Street, Suite 2400
Louisville, KY 40202
Tel: (502) 589-1000
*jreed@rwsvlaw.com*

4813-5049-6292.

*tearl@rwsvlaw.com*

*ATTORNEYS FOR PLAINTIFF SBAV LP*

4813-5049-6292.

## CERTIFICATE OF SERVICE

I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2015.

/s/ Jaclyn V. Piltch
Jaclyn V. Piltch

4813-5049-6292.