UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-00710-TBR-DW

SBAV LP, Plaintiff,

v.

PORTER BANCORP, INC., *et al.*, Defendants.

## MEMORANDUM OPINION AND ORDER

The Board of Governors of the Federal Reserve System and the Federal Deposit Insurance Corporation ("the Agencies") seek to intervene in a discovery dispute between SBAV LP and Porter Bancorp, Inc., regarding the production of certain bank examination documents. In light of the Agencies' request, Bancorp also asks the Court to stay its earlier Order on that issue. In *SBAV LP v. Porter Bancorp, Inc.*, No. 3:13-CV-00710-TBR, 2015 WL 1471020 (W.D. Ky. Mar. 31, 2015), *as amended* (W.D. Ky. Apr. 1, 2015), the Court overruled Bancorp's objection to producing bank examination documents. The Agencies have moved to intervene and ask this Court to reconsider that ruling. According to them, the federal common law of privilege and other administrative processes shield bank examination documents, such as those involved here, from disclosure. For reasons developed more fully below, the Court agrees that the Agencies are entitled to participate on this narrow issue and **GRANTS** the Agencies' Motion to Intervene (R. 201) and Bancorp's Motion to Stay (R. 205).

I.

A.

The Court has discussed the general facts of this case in prior opinions, but will repeat them as necessary to resolve the current controversy. In January 2013, SBAV

1

filed this lawsuit against Porter Bancorp, Inc., a publically-traded bank holding company, after losing its $5 million investment in PBI Bank, Inc., one of Bancorp's wholly-owned subsidiaries. *SBAV LP*, 2015 WL 1471020, at *1–2. The gravamen of SBAV's lawsuit is that Bancorp misrepresented the financial solvency of the Bank to secure SBAV's investment. *Id.* at *2. Among other things, SBAV alleges that Bancorp misrepresented the degree to which the Federal Deposit Insurance Corporation, the Board of Governors of the Federal Reserve System, and the Kentucky Department of Financial Institutions maintained confidence in the Bank's financial condition. *Id.* at *1–2.

In an effort to support its theory, SBAV sought discovery from Bancorp related to, *inter alia*, the FDIC and the Federal Reserve's prior examinations of the Bank. *Id.* at *3–4. Bancorp objected to producing that information on the basis of the federal bank examination privilege, and SBAV moved to compel. *Id.* at *4. The Magistrate Judge granted SBAV's request, and this Court overruled Bancorp's objection on April 1, 2015. *Id.* The Court held that Kentucky common law, under which there is no bank examination privilege, controlled. *Id.* at *5–8. Even assuming the federal common law of privilege applied, however, the Court found good cause to overcome it. *Id.* at *9–10. Rounding out its opinion, the Court concluded that SBAV need not exhaust the FDIC and Federal Reserve's administrative processes but instead could obtain the documents from Bancorp under Federal Rule of Civil Procedure 34. *Id.* at *10–11.

**B.**

The Agencies sought to intervene in this litigation on April 10, 2015, for the limited purpose of contesting the Court's opinion described above. (R. 201 at 1 (Motion to Intervene).) Bancorp filed a response supporting intervention, (R. 206 (Response in

Support of Intervention)), and SBAV filed a response objecting to the same, (R. 203 (Response in Opposition to Intervention)). In addition, Bancorp moved the Court on May 4, 2015, to stay its earlier Order until the Court decided the merits of the Agencies' petition. (R. 205 at 1 (Motion to Stay).)

## II.

### A.

Civil Rule 24 allows for two types of intervention: permissive and as a matter of right. Fed. R. Civ. P. 24(a)–(b). To establish the latter, a proposed intervenor must show "that '(1) the application was timely filed; (2) the applicant possesses a substantial legal interest in the case; (3) the applicant's ability to protect its interest will be impaired without intervention; and (4) the existing parties will not adequately represent the applicant's interest.'" *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 371 (6th Cir. 2014) (quoting *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011)); *see also Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)) (same). While an applicant must satisfy all four prongs to intervene, the Sixth Circuit has instructed that Civil Rule 24 "should be 'broadly construed in favor of potential intervenors.'" *Granholm*, 501 F.3d at 779 (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). When determining the propriety of intervention, the Court must accept as true the proposed intervenor's well-pleaded facts. *Horrigan v. Thompson*, 145 F.3d 1331, 1998 WL 246008, at *2 (6th Cir. 1998) (unpublished table disposition); *see also* Charles Alan Wright *et al.*, 7C *Federal Practice and Procedure* § 1914 (3d ed.), Westlaw (database updated April 2015) ("[T]he court will accept as true the well-pleaded

allegations in the [motion to intervene].").[1] The Court "retains broad discretion in setting the precise scope of intervention." *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013); *see also* Fed. R. Civ. P. 24 advisory committee notes (1966 amendment) ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

### B.

Likewise, and subject to congressional limitation, this Court is vested with inherent power "to process litigation to a just and equitable conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (citing *Ex parte Peterson*, 253 U.S. 300, 312–14 (1920)). Among those is the Court's authority to stay its own orders. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))); *see also In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993); *Jewell v. Davies*, 192 F.2d 670, 672–73 (6th Cir. 1951). In exercising its judgment, this Court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255 (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931); *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935)).

With its task appropriately framed, the Court turns first to the merits of the Agencies' petition.

---

[1] The published opinions of other United States Courts of Appeals are in accord with this proposition. *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 857 n.1 (9th Cir. 2013), *cert. denied sub nom. Moores v. Hildes*, 135 S. Ct. 46 (2014); *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 543 (1st Cir. 2006); *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995); *Chesapeake Bay Found. v. Am. Recovery Co.*, 769 F.2d 207, 209 n.* (4th Cir. 1985); *Foster v. Gueory*, 655 F.2d 1319, 1321 (D.C. Cir. 1981); *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977); *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960).


### III.

#### A.

The Agencies seek to intervene in this litigation for the limited purpose of contesting this Court's prior opinion. (*See* R. 201 at 1.) SBAV opposes intervention only on grounds of timeliness. (*See* R. 203 at 4–5.)[2] Therefore, the Court must determine if the Agencies timely sought to intervene in the present action.

#### 1.

Courts in this Circuit consider five factors to measure the timeliness of an application for intervention as of right:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*City of Detroit*, 712 F.3d at 930–31 (quoting *Grubbs v. Norris*, 870 F.2d 343, 345–46 (6th Cir. 1989)). No single factor controls. Instead, the Court must evaluate each "in the context of all relevant circumstances," *Blount-Hill*, 636 F.3d at 284 (quoting *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472–73 (6th Cir. 2000)) (internal quotation marks omitted), and is afforded considerable discretion in performing its task, *see City of Detroit*, 712 F.3d at 930.

---

[2] SBAV does not contest that the Agencies satisfy the other elements to intervene as a matter of right. (*See* R. 203 at 5.) Therefore, SBAV has waived any argument on the point. *See Drake v. U.S. Enrichment Corp.*, 63 F. Supp. 3d 721, 725 (W.D. Ky. 2014) (citing *Ctr. for Biological Diversity v. Rural Utils. Serv.*, No. CIV.A. 5:08-292-JMH, 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009)); *cf. Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 551–54 (6th Cir. 2008) (waiver on appeal). But even if it did not, the Court would still conclude that intervention is proper. *See Local 295/Local 851 IBT Emp'r Grp. Pension Tr. & Welfare Funds v. Fifth Third Bancorp*, No. 1:08-CV-421, 2012 WL 346658, at *2–4 (S.D. Ohio Feb. 2, 2012) (allowing the Federal Reserve to intervene as of right to assert the bank examination privilege), *adopted by* No. 1:08-CV-421, 2012 WL 639579 (S.D. Ohio Feb. 28, 2012).

**2.**

On balance, the Court concludes that the Agencies have timely moved to intervene in this matter. First, discovery is ongoing and no deadline has been set for its termination. Substantial progress has been made, but the end is not yet in sight. If intervention following the entry of judgment may be considered timely in some circumstances, *see United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395–96 & n.16, intervention in these circumstances is all the more appropriate, *see Cline v. Gowing*, No. 1:04-CV-00833, 2007 WL 978098, at *3 (N.D. Ohio Mar. 29, 2007) (holding intervention timely when discovery remained ongoing).

The limited scope for which the Agencies seek to intervene further supports their position. The Agencies do not ask to speak on the merits of SBAV and Bancorp's dispute. Instead, the Agencies disagree with the substance of this Court's prior decision and intend to file with this Court a motion to reconsider the same. (*See* R. 201-1 at 8–20.) The Agencies' request is both narrow and reasonable.

The Agencies also moved to intervene within a reasonable time after becoming aware of how this litigation might affect their interests. It appears undisputed that the Agencies had no knowledge of the litigation prior to the Magistrate Judge's January 16, 2015 Order. (*See* R. 201-1 at 4; *accord* R. 203 at 4.) Although unclear, the Agencies seem to have learned of the controversy sometime between then and April 10, 2015. The Agencies asked to intervene "less than two weeks after the Court's March 31st Order, and prior to the production of any privileged information." (R. 201-1 at 7.) Such a short length of time does not weigh against intervention.

Likewise, neither SBAV nor Bancorp will be unduly prejudiced—SBAV's arguments to the contrary notwithstanding. The only prejudice SBAV identifies in its briefing is the "delay caused by [Bancorp's] refusal to notify the Agencies" and the burden of again briefing the questions answered in this Court's decision. (R. 203 at 5.) It is settled, however, that to "the extent the assertion of [the intervenors'] relevant interests may cause delay, such a consideration is not grounds for denial of intervention—the analysis must be limited to the prejudice caused by the *untimeliness*, not the intervention itself." *City of Detroit*, 712 F.3d at 933 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977)). Even if Bancorp shirked its responsibility to timely notify the Agencies,[3] the Agencies cannot be faulted for that. On balance, then, any prejudice to SBAV and Bancorp is outweighed by the Agencies' interest in participating on the questions of privilege and exhaustion. The Court has adequately addressed SBAV's "legitimate concerns with finality, prejudice, and efficiency . . . by limiting the scope of intervention." *Id.* at 932.

Finally, the Sixth Circuit Court of Appeals has found, in similar circumstances, compelling reasons favoring intervention. As *In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995), said:

> [W]e think it advisable if not necessary for a party in litigation that possesses 'confidential supervisory information' to inform the Federal Reserve of any requests for production so the Federal Reserve will have notice and the opportunity to intervene and protect any interests, arguments, or concerns it may have.

---

[3] While SBAV and Bancorp spend much time debating which of the two had the responsibility to notify the Agencies about this litigation, it is at least plausible to say that such responsibility belonged to each. *Compare* 12 C.F.R. § 261.23(a)(1) (requiring person served with a subpoena to promptly notify the Federal Reserve's General Counsel), *and id.* § 309.7(b) (same for FDIC), *with id.* § 261.22(b)(1) (requiring person seeking access to confidential information to file written request with the Federal Reserve's General Counsel), *and id.* § 309.6(b) (same for FDIC). Yet despite being a prominent discovery issue for some time, inexplicably, neither bothered to notify the Agencies through any formal process. (R. 201-1 at 4; *accord* R. 203 at 4.)

*Id.* at 470 n.6. It instructed the district court on remand to "provide the Federal Reserve with notice and allow the Federal Reserve the opportunity to intervene," *id.* at 472, not merely to be heard. The reason is simple: "The bank examination privilege belongs to the Federal Reserve, and therefore, where a claim of the privilege is appropriate, the Federal Reserve *must* be allowed the opportunity to assert the privilege and the opportunity to defend its assertion." *Id.* (emphasis added). By granting the Agencies' request to intervene, the Court does precisely that.

Considering the totality of circumstances involved in this litigation, the Court holds that the Agencies may intervene as a matter of right.

**B.**

In light of the Agencies' request, Bancorp asks the Court to stay its earlier Order. (R. 205 at 1.) Staying the Order will allow the Agencies the opportunity "to assert and defend the bank examination privilege," Bancorp argues. (R. 205-1 at 1.) In addition, Bancorp says, a stay will allow the Court to reconsider its prior opinion and will promote an efficient and final resolution of the parties' dispute. (*Id.* at 2.) Having considered the parties' arguments and the record as a whole, the Court concludes that staying its prior Order is equitable under the present circumstances.

The Agencies have expressed their intent to participate and in fairness the Court ought to afford them that opportunity. If the Agencies are correct—a question which remains to be seen—disclosure could, at least in theory, irreparably harm them. *Cf. In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (holding forced disclosure of privileged documents constitutes irreparable harm in context of writ practice). And, of course, without staying its Order, Bancorp remains in the unenviable position of having

8

to produce what the Agencies characterize as privileged documents in the interim. Allowing the Agencies to file a motion to reconsider will promote a final resolution to what has been an ongoing discovery dispute, this Court's prior opinion notwithstanding.

SBAV responds that the privilege issue has been twice briefed, and that there is no utility in briefing the issue thrice. (R. 210 at 1–2 (Response in Opposition to Stay).) The Court is not without sympathy to SBAV, and its arguments are not without some force either. But those arguments are directed more to the question of intervention and less to the equities of staying the Order: With or without a stay, if the Agencies petition for reconsideration, SBAV will be forced to decide whether it will file a response, or whether it will rest on the laurels of its past briefing. The probability of additional briefing alone does not weigh against granting a stay.

SBAV's remaining argument is directed against Bancorp alone. Bancorp cannot be permitted to seek a stay, SBAV says, after waiting over a year to notify the Agencies of the instant litigation. (*Id.* at 2.) Seen through SBAV's eyes, the request for a stay is merely Bancorp's "latest gambit to delay the progress of this case." (*Id.*) Whatever the merits of those observations may be, however, none diminishes the Agencies' interest in pursuing reconsideration of the Court's earlier opinion. Appropriately balanced, the equities weigh in favor of granting a limited stay.

### IV.

For the reasons discussed above, and being otherwise sufficiently advised;

**IT IS HEREBY ORDERED** that Nonparties Board of Governors of the Federal Reserve System and the Federal Deposit Insurance Corporation's Motion to Intervene (R. 201) is **GRANTED** for the limited purpose of filing a motion to reconsider the Court's

Memorandum Opinion and Order of April 1, 2015 (R. 198), and to take an appeal, if any, on the issues addressed therein;

**IT IS FURTHER ORDERED** that Defendant Porter Bancorp's Motion to Stay (R. 205) is **GRANTED**, and that the Court's Memorandum Opinion and Order of April 1, 2015 (R. 198) **IS HEREBY STAYED**;

**IT IS FURTHER ORDERED** that all other discovery **SHALL PROCEED** consistent with this Memorandum Opinion and Order;

A separate Order setting a Telephonic Status Conference to establish a briefing schedule shall issue separate from this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

Date:

cc:    Counsel of Record